IN UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | CASE NO.: 5:18 CR 00653-001 |
| | ) | |
| Plaintiff, | ) | JUDGE CHRISTOPHER A. BOYKO |
| | ) | |
| -vs- | ) | **SENTENCING MEMORANDUM OF** |
| | ) | **JOHN J. VERESPEJ, JR.** |
| JOHN J. VERESPEJ, JR. | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

NOW COMES the Defendant, **JOHN J. VERESPEJ, JR.**, by and through his undersigned counsel, and hereby submits his Sentencing Memorandum. Mr. Verespej respectfully requests this Honorable Court consider a sentence sufficient, but not greater than necessary, to comply with the purposes of 18 U.S.C. §3553. A more thorough explanation of his sentencing request is attached hereto and incorporated herein in the attached Memorandum in Support. The intended submission of this Sentencing Memorandum is to assist the Court in fashioning the Defendant, **JOHN J. VERESPEJ, JR.'s**, sentence on July 25, 2019 at 2:00 p.m.

Respectfully submitted,

 */s. James M. Campbell*
JAMES M. CAMPBELL, #0004733
Attorney for Defendant, John J. Verespej, Jr.
2717 Manchester Road
Akron, OH 44319
P: (330) 745-2422
F: (330) 745-2447
jamescampbell@campbelllawakron.com

<u>**MEMORANDUM IN SUPPORT**</u>

**A.  PROCEDURAL BACKGROUND**

On November 9, 2018, a one count Indictment was filed against **JOHN J. VERESPEJ, JR.** (hereinafter referred to as Mr. Verespej).

Mr. Verespej was arrested on these charges on November 13, 2018 and was detained until November 29, 2018 when he was released from custody and immediately entered a residential drug treatment program. He completed the treatment program on December 27, 2018 and was released. On January 25, 2019 he was taken into custody and has remained in custody to this date.

Mr. Verespej was charged as follows:

Count 1 charged that on April 5, 2018, the defendant, committed the offense of manufacturing counterfeit Federal Reserve Notes in violation of 18 USC 471.

On April 9, 2019, Mr. Vereespej plead guilty to the one count in a written Plea Agreement.

**B.  FACTUAL BACKGROUND**

In April 2018, Mr. Verespej made several counterfeit twenty dollar bills on his home printer. He took the counterfeit notes to a local Wal-Mart on several occasions and passed them.

When he was confronted by the police officers at the store, he advised them that the counterfeit materials were still at his house and fully cooperated with the investigation.

**C.  PRETRIAL RELEASE/BOND/DETENTION**

Mr. Verespej was detained in federal custody from November 13, 2018 to November 29, 2018. He attended a residential drug treatment program from November 29, 2018 – December 27, 2018 and was out on bond until January 25, 2019 when he went back into custody. He has remained in custody since January 25, 2019.

**D.  PLEA AGREEMENT**

There is a written Plea Agreement filed in this matter. The pertinent parts of the Plea Agreement are as follows:

1. Mr. Verespej plead guilty to the only count.

2. The maximum statutory penalty for this count is a maximum sentence of imprisonment of 20 years and a maximum period of 3 years of supervised release.

3. The Court will determine the advisory guideline range after a presentence report has been prepared by the U.S. Probation Department and reviewed by all parties.

4. Mr. Verespej and the government agree to recommend that the Court impose a sentence within the applicable Sentencing Guideline range in accordance with the following computation:

   | | |
   |---|---|
   | Base Offense Level | 15 |
   | Subtotal Before Acceptance of Responsibility | 15 |

5. The Government will recommend a two-level reduction for acceptance of responsibility.

6. Neither Mr. Verespej nor the Government will recommend or suggest that a departure or variance is appropriate.

7. Mr. Verespej's criminal history shall be determined by the Court after the completion of a Pre-Sentence Investigation by the U.S. Probation Office.

8. If Mr. Verespej is given all of the adjustments set forth in his Plea Agreement, his final total offense level should be 13, which is calculated as follows:

   | | |
   |---|---|
   | Base Offense Level and all Specific Offense Adjustments | 15 |
   | Acceptance of Responsibility | -2 |

9. Mr. Verespej reserves the right to appeal his sentence under certain circumstances set forth in the Plea Agreement.

**E. LAW**

In *Peugh v. United States*, 133 S.Ct. 2072, 569 U.S. 530, (2013), the United States Supreme Court set out the following history with regard to the United States Sentencing Guidelines:

> Prior to 1984, the broad discretion of sentencing courts and parole officers had led to significant sentencing disparities among similarly situated offenders. To address this problem, Congress created the United States Sentencing Commission. *Mistretta v. United* States, 488 U.S. 361, 362, 366-367, 109 S.Ct. 647, 102 L.Ed.2d 714 (1989). The Sentencing Reform Act of 1984, 98 Stat. 1987, eliminated parole in the federal system and directed the Sentencing Commission to promulgate uniform guidelines that would be binding on federal courts at sentencing. *Mistretta*, 488 U.S., at 367, 109 S.Ct. 647. The Commission produced the now familiar Sentencing Guidelines: a system under which a set of inputs specific to a given case (the particular characteristics of the offense and offender) yielded a predetermined output (a range of months within which the defendant could be sentenced).
>
> In *United States v. Booker*, 543 U.S. 220, 244, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005), however, this Court held that mandatory Guidelines ran afoul of the Sixth Amendment by allowing judges to find facts that increased the penalty for a crime beyond "the maximum authorized by the facts established by a plea of guilty or a jury verdict." See also *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). The appropriate remedy for this violation, the Court determined, was to strike those portions of the Sentencing Reform Act that rendered the Guidelines mandatory. *Booker*, 543 U.S., at 245-258, 125 S.Ct. 738. Under the resulting scheme, a district court is still required to consult the Guidelines. See id., 2080*2080 at 259-260, 264, 125 S.Ct. 738; 18 U.S.C. § 3553(a)(4)(A). But the Guidelines are no longer binding, and the district court must consider all of the factors set forth in § 3553(a) to guide its discretion at sentencing, see *Booker*, 543 U.S., at 259-260, 264, 125 S.Ct. 738. The *Booker* remedy, "while not the system Congress enacted," was designed to "continue to move sentencing in Congress' preferred direction, helping to avoid excessive sentencing disparities while maintaining flexibility sufficient to individualize sentences where necessary." *Id.*, at 264-265, 125 S.Ct. 738.

Following *Booker* there was a triad of Supreme Court decisions in 2007, *Rita v. United States*, 551 U.S. 338, 127 S.Ct. 2456, 168 L.Ed.2d 203 (2007); *Gall v. United States*,

552 U.S. 38, 128 S.Ct 586, 169 L.Ed.2d 445 (2007); *Kimbrough v. United States*, 552 U.S. 85, 128 S.Ct. 558, 169 L.Ed.2d 481 (2207) clarified that a district court must begin its sentencing consideration with the Guidelines. See e.g. *Gall*, 552 U.S. at 49, 128 S.Ct. 586.

These cases developed a three-step process that Courts are required to follow before imposing sentences on defendants. This three-step process was very succinctly set out by the Honorable Chief Judge Curtis L. Callier in *United States v. Rothwell*, 847 F.Supp.2d 1048 (E.D. Tenn 2012):

> First, the Court determines the proper advisory Guidelines range. *Gall*, 552 U.S. at 49, 128 S.Ct. 586 (" [A] district court should begin all sentencing proceedings by correctly calculating the applicable Guidelines range ....") (citing *Rita* ); *see also Bistline,* 665 F.3d at 761 ("Although the Sentencing Guidelines are now only advisory, they still 'should be the starting point and the initial benchmark' for choosing a defendant's sentence.") (quoting *Gall,* 552 U.S. at 49, 128 S.Ct. 586). To make this determination the Court often will have to resolve objections to the PSR's Guidelines calculations as well as any factual or legal disputes related to a defendant's criminal history or offense of conviction. Once the Court has resolved any objections or other disputes, the Court calculates a defendant's advisory Guidelines range using the sentencing table in Chapter A, Part V of the USSG. Performing the Guidelines calculation as the first step permits a reviewing court to " first ensure the district court committed no significant procedural error, such as failing to calculate (or improperly calculating) the Guidelines range." *United States v. Robinson,* 669 F.3d 767, 773 (6th Cir.2012) (quoting *Gall,* 552 U.S. at 51, 128 S.Ct. 586).

> Second, the Court determines whether a departure from the advisory Guidelines range is warranted. This step requires the Court to determine whether, pursuant to the USSG Manual, any departures from the advisory Guidelines range apply. USSG ch. 5, pt. K; *Phelps,* 366 F.Supp.2d at 586. To assist the Court in determining whether it should grant an upward or downward departure, the Court considers arguments and motions filed by the parties under the Guidelines or the Commission's policy statements. 18 U.S.C. § 3553(a)(4) and (5). As the Court observed in *Phelps,* " [d]etermination of departures also allows the Sentencing Commission to better fulfill its role in making recommendations to Congress and in making periodic adjustments to the Guidelines in light of actual sentences being imposed." *Id.* at 585. Determination of departures is an essential part of properly calculating the applicable Guidelines range. Only after a court has correctly departed upward or downward (if it departs at all) from the initial Guidelines range has the court determined the proper advisory Guidelines range for sentencing purposes. It is often tempting to avoid the difficult departure analysis and go directly to a consideration of the sentencing factors under § 3553 but doing this would short circuit the sentencing process and

defeat the laudable goals of honesty in sentencing, transparency, and appellate review.

Once the Court has determined the proper Guidelines range and decided the propriety of any departures, the Court then imposes an appropriate sentence in light of the factors set forth in 18 U.S.C. § 3553(a). *Phelps,* 366 F.Supp.2d at 586. In sentencing a defendant under these factors, the District Court may not presume the Guidelines range is reasonable. *Gall,* 552 U.S. at 50, 128 S.Ct. 586. Instead, the Court must make an individualized assessment based on the facts presented." *Id.* The Court may impose a sentence within the applicable Guidelines range (after any clearly applicable departures) if such is consistent with the court's consideration of the § 3553(a) factors, or impose a non-Guidelines sentence if such is justified by the § 3553(a) factors. *See United States v. Vonner,* 516 F.3d 382, 387 (6th Cir.2008) (en banc). A non-Guidelines sentence need not be supported by factors that would have justified a departure under the mandatory pre- *Booker* regime. Departure case law, however, is helpful in determining whether a Guidelines sentence is appropriate and in assisting the Court in determining the appropriate sentence. *Phelps,* 366 F.Supp.2d at 586.

## F.  SENTENCING PROCEDURES

### 1.  CALCULATING THE ADVISORY GUIDELINE RANGE

#### A.  Offense Level

The government and Mr. Verespej in his Plea Agreement on pages 4 and 5, stipulated and agreed to the following with regard to his guideline offense level:

| Manufacturing Counterfeit Currency | | |
|---|---|---|
| Base offense level | 15 | § 2B5.1(b)(3) |
| Subtotal | **15** | |

he parties agree that no other specific offense characteristics, guideline adjustments, or guideline departures apply.

Mr. Verespej does not object to, nor does he contest, any of the computations made by the Presentence Report writer in the offense level computation even though he came to the same number using a different computation which is set forth as follows:

Base Offense Level                                                9

| | |
|---|---|
| Specific Offense Characteristics | +2 |
| Specific Offense Characteristics | 15 |
| Acceptance of Responsibility | -2 |
| Final Offense Level | 13 |

**B.     Criminal History Computation**

Mr. Verespej submits that the Presentence Report writer correctly found him to have three criminal history points; therefore, he should be placed in Criminal History Category II.

**C.     Departures and Variances**

Mr. Verespej in his Plea Agreement at paragraph 12 on page 4 agreed that "[n]either party will recommend or suggest in any way that a departure or variance is appropriate, either regarding the sentence range or regarding the kind of sentence."

This issue is left solely up to the Court's discretion to determine whether there is any basis to depart and/or vary from that guideline range or impose a sentence outside the advisory guideline range, and what sentence to impose.

Mr. Verespej submits that the Court should find that his advisory guideline should be computed based on offense level 13 and a Criminal History Category II.

**2.     IMPOSING AN APPROPRIATE SENTENCE IN LIGHT OF THE FACTORS SET FORTH IN 18 USC 355(A)**

The Court must next impose an appropriate sentence in light of the factors set forth in 18 USC 355(a). Mr. Verespej and his counsel remind the Court that in sentencing him under these factors, the Court may not presume that the guideline range is reasonable. *Gall*, 522 U.S. at 50, 128 S.Ct. 586

The Court should look at the facts presented, make an individualized assessment, and either impose a sentence within the applicable guideline range or impose a non-guideline sentence if such sentence is justified by the 3553(a) factors.

A sentencing court's "overarching duty" is to impose a "sentence sufficient, but not greater than necessary to comply with the sentencing purposes set forth in [18 U.S.C.] 3553(a)(2)." *Pepper v. United States*, 562 U.S. 476, 491 (2011) (quoting 18 U.S.C. 3553(a)).

18 U.S.C. 3553(a) states as follows:

(a) Factors To Be Considered in Imposing a Sentence. —The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

   (1)    the nature and circumstances of the offense and the history and characteristics of the defendant;

   (2)    the need for the sentence imposed—

        (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

        (B) to afford adequate deterrence to criminal conduct;

        (C) to protect the public from further crimes of the defendant; and

        (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

   (3)    the kinds of sentences available;

   (4)    the kinds of sentence and the sentencing range established for—

   (5)    any pertinent policy statement—

(6)    the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7)    the need to provide restitution to any victims of the offense.

Mr. Verespej and his counsel shall only address the relevant factors as they pertain to his case to assist the Court in determining what type and what length of sentence is sufficient, but not greater than necessary, to satisfy the purposes of sentencing.

**Factor One: The Nature and Characteristics of the Offense and the History and Characteristics of the Defendant (18 USC § 3553(a)(1))**

Mr. Veresepj is very aware that the nature and characteristics of the offense for which he is charged may be of great concern to this Court. To use a personal printer to print counterfeit money and then to pass it as if it is real money is wrong. But for his drug problems, he submits that he never would have committed this crime.

With regard to this factor, Mr. Verespej feels that it is important for the Court to know the full background of his history and characteristics before sentencing him.

Mr. Verespej was born in 1995 and at the time of sentencing he will be 23 years old. He only completed the 9th grade and does not have a high school diploma or a GED. He began working at an early age and began using drugs.

His worst background problem is his history of illegal drug use which began at age 17 when he started using methamphetamine and heroin. When he was in the drug treatment program at CAT (Community Assessment and Treatment Center), he reported symptoms of depression. He advised that his

depression triggers him to use drugs. He advised that he attempted suicide in 2017 due to his depression and drug use.

It is clear that Mr. Verespej needs drug treatment in order to get his life in order because if he continues on his path of self-destruction, he will be added as another death statistic in the opioid crisis.

All of this information is being provided to the Court in order for the Court to be able to recommend to the Bureau of Prisons and/or to the supervised release officer that Mr. Verespej be placed in an appropriate facility where he can get the drug treatment that he desperately needs. Mr. Verespej needs help and hopes that this Court can help him get the treatment that he needs so that when he is released after serving his sentence, this same scenario will not happen again.

**Factor Two: The Need for the Sentence Imposed**

    a. To reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;

    b. To afford adequate deterrence to criminal conduct;

    c. To protect the public from future crimes of the defendant; and,

    d. To provide defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

Mr. Verespej understands that this Court has the difficult task of imposing a sentence upon him that incorporates and takes into consideration all of the foregoing provisions. He submits that this Court could impose a low-end guideline sentence upon him that still reflects these sentencing considerations.

10

Mr. Verespej submits that a low-end guideline sentence would accomplish the sentencing goals set forth in 18 USC 3553(a)(2)(A-D) and would not demean the integrity of this Court or the goals of sentencing.

Mr. Verespej argues that a low-end guideline sentence would still reflect the seriousness of his offenses, would promote respect for the law, and would provide just punishment for his offenses.

Mr. Verespej acknowledges that a low-end sentence will still require him to spend some time in prison. Hopefully, this time will provide him with needed educational and vocational training as well as treating his drug addiction issues.

**Factor Three: The Kinds of Sentences Available**

If the Court decides to sentence Mr. Verespej to the guideline range sentence, then he must be sentenced to prison as the applicable guideline range is in Zone D of the sentencing table.

**Factor Four: The Need to Avoid Unwarranted Sentencing Disparities**

Mr. Verespej argues that sentencing him to a low-end guideline prison sentence will not be in disparity with other similarly situated defendants.

## G. CONCLUSION

Under 18 USC § 3553 (a), the Court is directed to impose a sentence that reflects the seriousness of the offense, promotes respect for the law, provides just punishment, deters others, protects the public from further crimes by Mr. Verespej, and provides rehabilitation. The ultimate question for this Court to decide is – what is just punishment for the crime that was committed by Mr. Verespej?

11

As counsel for Mr. Verespej, it is my position that he should receive the lowest-end possible guideline sentence that this Court may impose, giving him credit for the time he has been detained in this matter. This sentence request is based on matters previously addressed in this memorandum, namely: his personal history, his willingness to cooperate with the government, and his need for drug addiction care.  The least possible sentence would be a sufficient sentence, but not greater than necessary to comply with the purposes of 18 USC § 3553.

Mr. Veresepj respectfully requests that this Court recommend that he be placed by the BOP at FCI Elkton or FCI Morgantown to serve his sentence.

Respectfully submitted,

*/s. James M. Campbell*
JAMES M. CAMPBELL, #0004733
Attorney for Defendant, John J. Verespej, Jr.
2717 Manchester Road
Akron, OH 44319
P: (330) 745-2422
F: (330) 745-2447
jamescampbell@campbelllawakron.com